22 N.J. Super. 129 (1952)
91 A.2d 650
GRACE DRESSLER, PLAINTIFF-APPELLANT.
v.
ALBERT I. MAYER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1952.
Decided October 20, 1952.
*131 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Ward Kremer argued the cause for the plaintiff-appellant.
Mr. Edward W. Haines argued the cause for the defendant-respondent.
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The complaint of the plaintiff, being grounded in a statement alleged to be libelous per se made by defendant to the defamation of the plaintiff, was, on motion of the defendant, dismissed by the Law Division Judge as not setting forth a cause of action. Plaintiff appeals from the judgment of dismissal.
Essentially, the facts are that in the Spring of 1951 the Borough of Seaside Park was preparing for a primary contest. It would appear that the rival factions are represented in the parties to this matter. The plaintiff's husband was a candidate for mayor, and the defendant, incumbent mayor, was seeking re-nomination. The plaintiff, along with other citizens of the borough, appealed to the Attorney-General of New Jersey, by petition, complaining of growing election corruption in the borough and requested an investigation.
Thereafter, the incumbents, of which defendant was a member, retorted with a statement in the press addressed to the "Citizens of Seaside Park," reciting the petition to the *132 Attorney-General, the action requested therein, setting forth the signers' names and the alleged libelous words contained therein, to wit: "Some of these signers, notably Gracie Dressler, Leroy Borton and William A. Castor, as we have already stated, are quite capable of political conniving." The balance of the statement concerns political activities of the plaintiff's alleged faction.
In her complaint, plaintiff asserts that the statement complained of was falsely and maliciously conceived and published heaping upon her defamation of character, name and credit to her injury and damage. In dismissing the complaint, the trial judge found that the statement complained of, at best, charged plaintiff with the ability to do wrong and not with any overt act or wrongdoing; and that the statement was not libelous per se.
The plaintiff contends that the trial judge erroneously failed to distinguish between the effect of written and spoken defamatory statements and that in this instance, the written libelous words are actionable since the plaintiff "has been injured in her good name, fame and credit, and brought into public scandal and disgrace with and among her neighbors and the members of her community and other worthy citizens of the State, and the defendant has thereby caused the plaintiff to be, by those neighbors and citizens particularly, suspected of being unfit for the many activities in which plaintiff is engaged, and untruthful and lacking in personal integrity"; that the innuendo ascribed to the words complained of import wrongdoing to the plaintiff; that by definition, conniving involves criminality of the party accused and as such is libelous per se; therefore, she should be permitted to introduce her proofs of libel and allow the determination thereof to rest with the jury.
The defendant contends that it is for the court to determine whether the words are reasonably capable of being considered defamatory; that they should be considered in light of the circumstances of their publication; that when so construed, the statement complained of is *133 harmless to the plaintiff; that the allegation of capability of "political conniving" limited the implication to political matters and, that the statement containing the alleged libelous words must be considered in its entirety as a legitimate campaign retort to the attack of a rival political faction.
"In order to be libelous per se, the defamatory words must be of such a nature that the court can presume as matter of law that they will tend to disgrace and degrade the person or hold him up to public hatred, contempt, or ridicule or cause him to be shunned and avoided; in other words, they must reflect on his integrity, his character, and his good name and standing in the community, and tend to expose him to public hatred, contempt, or disgrace. The imputation must be one which tends to affect plaintiff in a class of society whose standard of opinion the court can recognize. It is not sufficient, standing alone, that the language is unpleasant and annoys or irks plaintiff, and subjects him to jests or banter, so as to affect his feelings." 53 C.J.S., Libel and Slander, sec. 13, p. 59.
It is generally held that:
"Printed words of ridicule or contempt which relate solely to political views or arguments on questions of public interest, without attacking the character of a person or imputing to him immorality or a violation of the law, but tending merely to lessen him in public esteem or wound his feelings, are not actionable as libel without special damages. * * *" 53 C.J.S., supra, sec. 31, p. 74.
The circumstances under which the statement complained of was released serves to explain away the sting of the impact attributed to it by the plaintiff. The situation was a factional dispute in a primary election in which the plaintiff, through her petition with other parties, cast aspersions upon the manner in which the elections were being conducted, which charge was calculated to reflect upon the municipal officials, among whom was the defendant. In his efforts to seek re-nomination, the defendant apparently felt the necessity to appear free from any such stigma of corruption and answered plaintiff's charge with the statement that the move was conceivably calculated as a political maneuver; that it may have been calculated to gain plaintiff's faction certain advantage over the defendant's faction.
*134 Additionally, it must be noted that defendant does not charge the plaintiff performed any act of wrongdoing or even that one was contemplated, but merely that she possessed the ability or was capable of "political conniving." This is not made as a statement of fact as to an accomplished or past event, but merely a passing observation of a possibility, a reflection of opinion or comment.
We perceive a difference between a charge of "connivance" and an observation that one may be capable of "conniving." The former is a charge of the commission of an unlawful overt act; the latter, an observation or comment that one possesses the ability to cooperate secretly for a purpose and in this instance, that purpose is explained to be political reasons or advantages. "Connivance" is defined in Black's Law Dictionary (4th ed. 1951), as: "The secret or indirect consent or permission of one person to the commission of an unlawful or criminal act by another. A winking at; voluntary blindness; an intentional failure to discover or prevent the wrong; forbearance or passive consent." "Connive" is defined in the same volume to mean: "To co-operate secretly with, or to have a secret or clandestine understanding with. To take part or co-operate privily with another, to aid or abet. To look upon with secret favor; it implies both knowledge and assent, either active or passive." Considering the words here complained of in their most damaging light, they import nothing more nor less than an assertion that the plaintiff was capable of scheming with others to obtain a political advantage over an opposing political group in the midst of a heated political campaign.
"Although there are a few decisions to the contrary, the great weight of authority supports the view that publications dealing with political matters, public officers, and candidates for office are entitled to a measurable privilege by reason of the public interest involved therein. The principal limitations upon the rule are that the statements must be within the bounds of fair comment and must not be motivated by actual malice." 33 Am. Jur., Libel and Slander, sec. 169, p. 161. Cf. 3 Restatement, Torts, sec. 607.
*135 In the case of Merrey v. Guardian Pub. Co., 79 N.J.L. 177, 184 (Sup. Ct. 1909), affirmed 81 N.J.L. 632 (E. & A. 1911), the court discussed the question of fair comment and criticism of public acts and concern, and stated:
"* * * What is really meant is that fair and bona fide comment and criticism upon matters of public concern is not libel, and that the words are not defamatory. Henwood v. Harrison, L.R. 7 C.P. 606; Campbell v. Spottiswood, 32 L.J., Q.B. 185. See, also, Burt v. Advertiser Newspaper Co., 154 Mass. 238, 242, 28 N.E. 1, 13 L.R.A. 97."
Cf. Rogers v. Courier Post Co., 2 N.J. 393 (1949).
"Whether a publication falls within or outside the scope of comment and criticism is a question of law. It is for the court to determine, for example, whether the subject of the alleged defamatory criticism is a matter of public concern. Whether the publication has exceeded the limits of fair criticism or comment may be a question of law or of fact, depending on the circumstances. * * * However, where the facts are plain, and only one inference can be drawn therefrom, the question whether a statement exceeded the limits of fair comment and criticism is one of law for the court." 53 C.J.S., supra, sec. 229, pp. 349, 350.
In determining whether words are capable of a defamatory meaning under the circumstances, the court should construe them according to the fair and natural meaning which will be given them by reasonable persons of ordinary intelligence. Ogden v. Riley, 14 N.J.L. 186 (Sup. Ct. 1833); Cole v. Grant, 18 N.J.L. 327 (Sup. Ct. 1841); Chapman v. Gannett, 132 Me. 389, 171 A. 397 (Sup. Jud. Ct. 1934); Lancour v. Herald & Globe Ass'n., 111 Vt. 371, 17 A.2d 253, 132 A.L.R. 486 (Sup. Ct. 1941); Kinsley v. Herald & Globe Ass'n., 113 Vt. 272, 34 A.2d 99, 148 A.L.R. 1164 (Sup. Ct. 1943). A sentence or phrase may not be seized upon and detached from its context to support an action for libel, if the publication as a whole is not, in fact, defamatory. Corbett v. American Newspapers, 1 Terry 10, 40 Del. 10, 5 A.2d 245 (Super. Ct. Del. 1939); Kinsley v. Herald & Globe Ass'n., 113 Vt. 272, 34 A.2d 99, 148 A.L.R. *136 1164, supra. Where, as here, the language complained of is of common understanding and unambiguous, the issue as to whether the alleged libelous communication is capable of bearing the meaning ascribed to it by the plaintiff and whether the meaning so ascribed and carried is capable of being defamatory is a question of law for the court. Restatement, Torts, sec. 614, p. 304; O.J. Blende v. Hearst Publications, Inc., 200 Wash. 426, 93 P.2d 733, 124 A.L.R. 549 (Wash. Sup. Ct. en banc, 1939); Jacobs v. Transcontinental & West. Air, Inc., 358 Mo. 674, 216 S.W.2d 523, 6 A.L.R.2d 1002 (Mo. Sup. Ct. 1948).
Here, the defendant's statement recites that plaintiff among others, filed a communication with the Attorney-General alleging corruption and asking for an investigation; that plaintiff is the "wife of one of the local candidates for Mayor"; that it was the defendant's opinion that such action was not in the interest of the welfare of the community; that the plaintiff, among other signers of the petition, was in the opinion of the publishers of the statement, "quite capable of political conniving."
The statements made by the defendant, along with the other publishers of the item, were factual and established, except for the opinions and comments which were readily discernible as such. In light of the circumstances surrounding the publication, i.e., the political campaign and accusations generally made by a rival faction, we feel constrained to hold that the phrase complained of was not libelous, but was within the category of fair comment and not actionable. The trial court properly held that the words complained of were not libelous per se.
The judgment is affirmed.