Sybil Kinsley *v.* Herald and Globe Association.
February Term, 1943.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and
Jeffords, JJ.

Opinion filed October 5, 1943.

*Finn and Monti* for the plaintiff.

*Fenton, Wing & Morse* and *Carver & Lawson* for the defendant.

BUTTLES, J. This is an action in tort in which the plaintiff seeks damages for an alleged libel. The defendant publishes in the City of Rutland a daily newspaper called the Rutland Herald. In the issue of this paper dated Dec. 12, 1939, the following article, claimed to be libelous, appeared on the editorial page:

### A LEGAL RACKET

A Montpelier man and his wife have been awarded $12,800 in Federal Court for injuries sustained in an automobile accident in a car driven by their son, a New Hampshire minister. Suit was brought against the son.

If the son carried public liability insurance, the cost of the verdict will be borne by some insurance company, whose funds come from other people who pay liability premiums, even as you and I. In other words, it is entirely possible that a reader of this comment, who has over a period of years paid premiums to an insurance company, may now enjoy the spectacle of some of his premium money being handed over from the company to the mother and father of the insured.

We leave it to the imagination of our readers to guess who is paying the bill in this pleasant little family affair, and we urge them to bear it in mind when they write out a check for their next liability premium. After all, if they get tired of paying premiums, and getting nothing back, they can always take their old grandmother out for a ride and hope for the best.

■ The plaintiff's complaint avers that she and her husband were the plaintiffs in the action referred to in this article and that their son was the defendant therein. It also alleges, in effect, that the article, considered as a whole including the headline, wrongfully and maliciously imputes to the plaintiff and to her husband an improper, corrupt and collusive scheme with their son for the purpose of obtaining money to which they were not rightfully and honestly entitled. Such imputations, if established, would be libelous, and in the absence of an adequate defense would support the plaintiff's action. 36 CJ Libel and Slander, Sec. 37, p. 1168; 33 Am Jur Libel and Slander, Sec. 50; *Colby* v. *Reynolds,* 6 Vt 489, 494, 27 Am Dec 574.

The defendant answered pleading general denial and two other defenses. By leave of court the third plea was later struck out and to the second plea the plaintiff demurred. The cause comes to this Court before final judgment, under the provisions of P. L. 2072 upon the plaintiff's exceptions to the overruling of her demurrer.

The challenged plea admits the facts alleged by the complaint as to the ownership of the Rutland Herald and the publication therein on the date alleged of the article claimed to. be libelous. It also avers that the action referred to in the article was brought to recover damages for personal injuries suffered by the plaintiff when the car driven by her son, in which she was riding, collided with a telephone pole, it being charged that the collision was due to the son's negligence; that during the trial her husband, who was the father of the defendant, was joined with her as a party plaintiff; that the jury rendered a verdict in favor of this plaintiff for the sum of $6800, and in favor of her husband for the sum of $6000; that the defendant son was insured by the Merchants Mutual Casualty Company against liability resulting from automobile accidents; that because of said verdicts the insurer was compelled to pay and did pay to the plaintiff and her husband the sum of $11000, and that said insurer's sole source of income from which to pay claims of this nature is the premiums paid to it by its policy holders.

The plea further avers that the subject matter of this action, the identity and relationship of the parties to each other and the size of the verdicts rendered therein were matters of importance,

concern and interest to all persons residing in the territory through which the defendant's newspaper circulates, and to the public generally; that the article in question was a true and accurate statement of the facts so far as it purported to state the facts, and that the balance of the article was fair and reasonable comment and criticism of a matter of public interest and importance; that the defendant, its agents, servants, and employees were not actuated by malice or an intention to injure the plaintiff, but only by a desire to call the attention of the public to a matter of great public interest and importance and to set forth its views, comments and criticisms in regard thereto.

The word "spectacle" which occurs in the published article may mean "a public display appealing, or intended to appeal, to the eye by its mass, proportions, color etc." Webster's New International Dictionary. According to the same authority the word "legal", which occurs in the head line, may mean "lawful" or it may only mean "of or pertaining to law". The word "racket" has several meanings. It may mean merely "a confused, clattering noise", but in recent times it has come to be used, also, with a more sinister significance. One definition given by Webster's latest edition is "a dodge or trick; a fraudulent scheme, game or the like; an imposture." It may mean engaging in an occupation to make money illegitimately. *Bradley* v. *Connors*, 7 NYS 2d 294. It has been said, however, that the word is often oddly and innocently used to describe one's vocation or business or diversion, as, for instance, the football racket, the baseball racket, the comic strip racket, the hairdressing racket, the prize fight racket, without meaning or intending any opprobrious or defamatory reflection and that the general public not only knows this but is guilty of using the very same kind of language. *Central Ariz. Lt. and Pr. Co.* v. *Akers*, 45 Ariz 526, 46 P2d 126, 132. In the same case it is further said that it is the connection in which the word "racket" is used that determines whether its meaning is innocent or defamatory.

In the present case the imputations which may be found in the use of the word "racket", the designation as a "spectacle" of the payment of the plaintiff's verdict from funds derived by the insurer from its policy holders, the reference to "this pleasant little family affair", and the suggestion to dissatisfied policy holders that they take their old grandmother out for a ride and hope for the

best, clearly render the article as a whole susceptible of a libellous interpretation. Is the language libellous *per se*?

■ ■ The rule as to what constitutes a libel is somewhat broader than the corresponding rule with respect to slander. This publication to be libelous must tend to blacken the reputation of the plaintiff and expose her to public hatred, contempt or ridicule. 36 CJ 1143; 33 Am Jur Libel and Slander Sec. 3; *Lyman* v. *New England Newspaper Pub. Co.*, 286 Mass 258, 190 NE 542, 92 ALR 1124, 1126; *Brown* v. *Elm City Lumber Co.*, 167 NC 9, 82 SE 961, LRA 1915E 275, Ann Cas 1916E 631. A similar though somewhat more extended statement is found in *Colby* v. *Reynolds*, 6 Vt 489, 494, 27 Am Dec 574. This Court has recently said that in determining whether it has that tendency the meaning of the alleged libel is to be gathered from the whole publication. It is not to be construed *in mitiori sensu*, but the language is to be taken in its plain and natural meaning, and to be understood by courts and juries as other people would understand it, and according to the sense in which it appears to have been used and the ideas it is adapted to convey to those who read it. If such language is ambiguous and admits of more than one meaning, it is, when necessary to ascertain the meaning, for the jury to say what it means; but if the language is not ambiguous, and does not admit of more than one meaning, it is for the court to say what it means. *Lancour* v. *Herald and Globe Assn.*, 111 Vt 371, 379, 17 A2d 253, 132 ALR 486, and cases cited.

While the details of the misconduct with which this plaintiff is charged do not appear from the publication, it seems clear that the article, considered as a whole, with the headline, is not ambiguous, and that it must be understood as charging her with prosecuting a dishonest and collusive action at law in an attempt to get money to which she was not lawfully entitled. There is nothing set forth in the article to which the headline "A Legal Racket" can refer except the litigation referred to in the first paragraph thereof. The "pleasant little family affair" in which the reader is to guess who pays the bill must refer to the same law action. In our opinion this phrase cannot be construed to refer to an honest action brought and prosecuted honestly to recover for injuries actually received in an automobile accident. This opinion is supported by other parts of the article to which we have referred and by the

article as a whole. We hold that the language of the publication is libellous *per se*.

One of the grounds upon which the demurrer is based is, in effect, that the portion of the publication which is admittedly comment, as distinguished from statement of facts, does not, it is contended, constitute fair comment and criticism of the judicial proceedings to which the publication refers, nor of the acts of the plaintiff as a litigant therein. Matters of public interest and concern are legitimate subjects of criticism, and everyone has a right to comment thereon as long as he does so fairly and with an honest purpose. Such comments or criticisms are not actionable however severe in their terms, unless they are made maliciously. 33 Am Jur Libel and Slander, Sec. 161; *Washington Times Co.* v. *Bonner*, 66 App D. C. 280, 86 F2d 836, 110 ALR 393, 401; *Bearce* v. *Bass*, 88 Me 521, 34 A 411, 412, 51 Am St Rep 446; *Diener* v. *Star-Chronicle Pub. Co.*, 230 Mo 613, 132 SW 1143, 33 LRANS 216, 220; *Hoeppner* v. *Dunkirk Ptg. Co.*, 254 NY 95, 172 NE 139, 72 ALR 913, 917.

That the proper administration of justice is a matter of vital public interest and concern is self evident. See 3 Restatement of Torts, Sec. 607 E. But such comment is not fair if it goes further than the occasion or the acts commented on warrant. 33 Am Jur Libel and Slander Sec. 162; Annot. Ann Cas 1917B 416. This limitation is included in the rule which is thus stated in the Restatement of Torts, Vol. 3 Sec. 606: "Criticism of so much of another's activities as are matters of public concern is privileged if the criticism, although defamatory (a) is upon, (i) a true or privileged statement of fact, or (ii) upon facts otherwise known or available to the recipient as a member of the public, and (b) represents the actual opinion of the critic, and (c) is not made solely for the purpose of causing harm to the other."

It is admitted that the publication here in question refers to the action in which the plaintiff herein was a plaintiff and her son was the defendant. The facts stated in the article and those asserted in the answer indicate no different situation in that action than that which exists in any successful automobile negligence action in which the defendant is insured against liability, except the fact of the kinship of the parties. Perhaps the amount of recovery was greater than that in the majority of such cases but so far as

appears the evidence may have shown proportionately greater injuries to the plaintiff. Perhaps some people would question the propriety of a suit by a mother against her son, even when the financial loss, if any, would fall upon a third party, but so far as appears there was nothing illegal or culpable about it and the plaintiff was entirely within her rights in bringing the action. It seems clear that the facts stated in the publication do not warrant comment reflecting upon the plaintiff personally and tending to blacken her reputation, and we find nothing in the record tending to show that such facts existed which were otherwise known or available to the readers of defendant's newspaper.

It is apparent that at least to the extent we have indicated the question of fair comment is one of law and not of fact, as contended by the defendant. It is unnecessary to consider the other grounds upon which the demurrer is predicated.

The defendant invokes the rule that a demurrer relates back through the whole record and attaches to the first substantial defect in the pleadings on either side and contends that the plaintiff's complaint should be dismissed because it fails to allege special damages which come within the rule requiring such damages to be pleaded and shown with respect to a publication that is not libelous *per se*. This contention is not applicable here since we hold the questioned article to be libelous *per se*.

*Judgment reversed, demurrer sustained and cause remanded.*

MOULTON, C. J. (dissenting). The plea to which the plaintiff has demurred, alleges in substance that the publication truly stated the facts that the plaintiff recovered damages of $6,800. in an action against her son, for injuries sustained in an automobile accident; that the son was insured against public liability for personal injuries, and that the insurance carrier was compelled to pay and did pay the amount of the judgment. It also alleges that the only source of the insurance carrier's income for the payment of claims and judgments against the policy holders was the premiums paid by them; that the action, the identity of the parties, their relationship to each other and the size of the verdict were matters of importance, concern and interest to all persons residing in the territory through which the defendant's newspaper circulated, and to the public in general; that the language complained of together

with any meaning that might fairly and reasonably be ascribed to it constituted fair and reasonable comment upon and criticism of a matter of public interest and importance, and were not intended to be understood, and could not be understood as a statement of facts; that the defendant had no animosity or ill will against the plaintiff and no intention of injuring her, but was moved solely by a desire to call the attention of its readers and the public in general to a matter of public interest and importance and to set forth in good faith and without malice its views, comments and criticisms thereon.

The demurrer appears to be based upon the ground that the entire article is clearly libellous and cannot in any event be classed as fair and reasonable comment.

The majority of this court have taken this view, but I am far from being satisfied that the issue here presented can be so adjudged as a matter of law. I concede that the article is susceptible of being construed as actionable libel. A jury may well find that, taken as a whole, and understood as people in general would understand the language used, it amounts to an imputation that the plaintiff instituted and maintained an unfounded and collusive action against her son, with the motive and result of defrauding a liability insurance company. But it seems to me that another interpretation may reasonably, and without resorting to a construction *in mitiori sensu,* be put upon it.

The demurrer admits the truth of the allegations of the plea to the effect that action brought by the plaintiff against her son, the relationship of the parties and the size of the verdict, were matters of public interest and importance, and that the defendant acted in good faith and without malice or ill will toward the plaintiff or intention to harm her.

I would hold that the article may be reasonably understood as an expression of the opinion of the writer concerning tort actions, arising from automobile accidents, between near relatives, where the damages recovered must be paid by liability insurance companies, and, without the imputation of anything wrong or illegal in the conduct of the plaintiff in the particular instance, calling attention to the danger of collusion and fraud in proceedings of this nature. That the criticism may, in the opinion of others, be unsound or prejudiced does not destroy the privilege, and the ex-

travagant form of its expression is unimportant. So long as a newspaper writer states his actual opinion, on a matter of public concern, based upon a true statement of facts, and without the sole purpose of causing harm to another he cannot be held liable for what he writes and causes to be published, although it may be defamatory. Am Law Inst. Restatement of Torts, vol. 3, para. 606, and comment c. "A comment is fair when it is based on facts truly stated and free from imputations of corrupt or dishonorable motives on the part of the person whose conduct is criticised, and is an honest expression of the writer's real opinion or belief." *Briarcliff Lodge Hotel, Inc.*, v. *Citizen-Sentinel Publishers,* 260 NY 106, 118, 183 NE 193, 198. It is not until the limits of fair criticism are exceeded that the publication passes into the region of libel, and whether under given circumstances, those limits have been passed is ordinarily, though not always, a question for the jury. *Triggs* v. *Sun Printing and Pub. Ass'n,* 179 NY 144, 154, 71 NE 739, 66 LRA 612, 103 Am St Rep 841, 1 Ann Cas 326. I think that the plea in this case presents an issue of fact, and I would affirm the ruling of the trial court.

I am authorized to say that Mr. Justice Jeffords concurs in this dissent.

## ON MOTION FOR REARGUMENT.

BUTTLES, J. On leave, duly obtained, counsel for the defendant have filed a motion for reargument, pending which the entry of judgment has been withheld. The defendant complains that we have not more specifically considered the claim made in its brief to the effect that the allegation of its answer that the objectionable portion of the publication "together with any meaning or innuendo which may fairly and reasonably be ascribed thereto was and constituted fair and reasonable comment upon and criticism of a matter of public interest and importance", is itself a statement of fact which is admitted by the plaintiff's demurrer. This contention is referred to briefly in the second paragraph from the end of the foregoing opinion. In its motion the defendant also asserts that we have misapprehended the meaning of Section 606 of the Restatement of Torts.

It is well settled that a demurrer admits the facts that are well pleaded, but it does not admit the conclusions of law made in the plea. *State* v. *Bissell,* 106 Vt 80, 87, 170 A 102 ; *Page* v. *Mc-*

*Clure,* 79 Vt 83, 89, 64 A 451. If the language of the publication of which complaint is made be conceded to be comment and criticism, and if that language is susceptible only of an interpretation which is libelous, as the majority of the Court here hold, the question whether the publication is within the protection which the law gives to "fair and reasonable comment upon and criticism of a matter of public interest and importance" may be a mixed question of fact and law, since it cannot be questioned that the law requires comment and criticism to have certain qualifications or limitations in order to afford protection from the consequences of publishing a libel. If it appears from the publication and from the defendant's answer that one or more of these essential qualifications is certainly lacking then it should be ruled as a matter of law that the defense of fair and reasonable comment and criticism is not available, and the allegation by the defendant in its answer that the language of the publication is of that character does not make it such a statement of fact as is admitted by the demurrer.

One such necessary qualification is, as stated in the opinion, that the comment must not go further than the occasion or the acts commented on warrant, or, as stated in Sec. 606 of the Restatement of Torts, from which the opinion quotes, such criticism is privileged if it is upon a true or privileged statement of fact or upon facts otherwise known or available to the recipient as a member of the public, and if it meets the other requirements therein set forth. It is true, as suggested, that Comment C under the same section contains the statement: "Unlike a personal attack upon a public man, . . . the fact that comment or criticism is one which is not reasonably warranted by the facts upon which it is based is immaterial." But the significance of the words "facts upon which it is based" is indicated by the further statement in the same comment under that section that "it is necessary, however, that the comment have some relation to the facts upon which it is made. If it has not it may well be taken to imply the existence of other undisclosed defamatory facts."

Let it be assumed, to take a simple illustration, that in such a publication the fact stated is that A has taken a deed to be recorded in the office of recorder B, which is the proper office for such record, and that it is further stated, or is a matter of common knowledge, that B has in the past been guilty ·of dishonesty and that

forged deeds have theretofore been recorded in that office. Such facts, without more, would not, we take it, be a sufficient basis for comment stating or implying that A had forged the signatures to his deed. So here the fact that the plaintiff has seen fit to resort to a court of law for a purpose which, so far as appears, was an entirely proper one, together with the other facts stated in the publication, do not constitute a sufficient basis for defamation of the plaintiff. The necessary relation can be established only by "implying the existence of other undisclosed defamatory facts." If we could take judicial notice of all the facts which the defendant suggests were matters of common knowledge, such as the claimed excessive amount of litigation of this character in Rutland County, the suspected unprofessional solicitation by some attorneys of cases of this kind, and the hint, if such it is intended to be, of judicial laxity, the defendant's case here would not, in our opinion, be aided thereby. The necessary relation of the charge made against this plaintiff to the facts available still would not be established. That is there would still be a *non sequitur*. This, we judge, is in accordance with Mr. Seelman's contention that the true test is inferability. See discussion on pages 236-237 of that author's work on the Law of Libel and Slander in New York.

■ It is said in *State* v. *Colby,* 98 Vt 96, 99, 126 A 510, 511, quoting from Taft J. in *Post Pub. Co.* v. *Hallam,* 59 F 530, 8 C. C. A. 201, that "the existence and extent of the privilege in communications are determined by balancing the needs and good of society against the right of an individual to enjoy a good reputation when he has done nothing which ought to injure it. The privilege should always cease when the sacrifice of the individual becomes so great that the public good to be derived from it is outweighed." It may be that in establishing that balance this court has given more weight than have the courts of some jurisdictions to the rights of the individual. If so we see no occasion for receding from our views. In the Colby case, *supra,* at page 99 of 98 Vt, 126 A at page 511, language is used which, while not exactly in point here, is indicative of the attitude of this Court towards a related question. It is there said: "It is not the law, that, because a man fills a station before the public eye, he becomes a target at which all the artillery of ridicule, ill-will, or malice may be leveled. He may be assailed when duty or interest demand it, and then only under the

rules of fair, temperate criticism." It is interesting to note that forty-five years earlier identical language was used in *Shurtleff* v. *Stevens*, 51 Vt 501, 519, 31 Am Rep 698. We perceive no adequate reason why a private citizen whose only connection with public affairs is that he seeks enforcement of his rights or redress of his wrongs in the proper forum should be open to defamatory attack otherwise than in accordance with such rules. *Motion for reargument denied. Let full entry go down.*