2014 VT 134

## Marilyn Davis v. The American Legion, Department of Vermont, et al.

[114 A.3d 99]

No. 14-099

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Durkin, Supr. J., Specially Assigned**

Opinion Filed December 19, 2014

---

*Charles S. Martin* of *Charles S. Martin & Associates, P.C.,* Barre, for Plaintiff-Appellant.

*Robin A. Freeman* of *Law Office of Caroline S. Earle, PLC,* Montpelier, for Defendant-Appellee The American Legion Department of Vermont.

*Stephen D. Ellis* of *Ellis Boxer & Blake PLLC,* Springfield, for Defendants-Appellees.

¶ 1. **Skoglund, J.** Plaintiff Marilyn Davis appeals the trial court's grant of defendants' Vermont Rule of Civil Procedure 12(b)(6) motions to dismiss her several claims, which seek to rectify alleged harms stemming from disagreements among Davis and various American Legion officials and staff. We agree with the trial court's ruling and affirm on substantially the same grounds.

¶ 2. The allegations in Davis's complaint and the exhibits attached thereto explain the following. Davis brought her four-year-old granddaughter to karaoke night at The American Legion, Barre Post No. 10 club hoping to have her sing, but their evening ended on a sour note when on-hand staff asked them to leave. Davis is a member of the Barre Post No. 10 Auxiliary Unit, a group affiliated with Post 10, but she is not a member of Post 10. Post 10 Auxiliary is a subsidiary group of the national Auxiliary

organization created for female relatives of veterans. See *infra*, ¶ 10. Post 10's regularly scheduled karaoke nights, like the one in question, are open to the public. A Post 10 club rule explicitly prohibits minors at the club after 7:00 p.m., except by special permission of the governing body of Post 10, the Post 10 House Committee. Davis claims the Committee had previously granted her special permission to bring her granddaughter to karaoke night and stay until 7:30 p.m. At 7:00 p.m. on the night in question, however, on-hand staff monitoring the karaoke event sought to enforce the no-minors rule by asking Davis and her granddaughter to leave. Davis protested and followed a House Committee member into the parking lot. A disagreement ensued. Eventually, Davis and her granddaughter left the premises, but were not refunded their six-dollar combined entry fee. Over the next two days, feeling wronged by that night's events, Davis posted messages on the Legion Post Barre Facebook page criticizing the organization, certain members, and club staff.

¶ 3. The House Committee then voted at a special meeting to limit Davis's privileges at the Post 10 club: For a period of four months, she was banned from the club and club activities, except that she could attend Auxiliary meetings there. The Committee sent a "letter of reprimand" to Davis, which stated this restriction and explained that their decision was based on her refusing to cooperate with Post staff at the karaoke event, "verbally attacking" Post officers, and making inaccurate Facebook comments. The Committee copied the Post 10 club manager and the president of the Post 10 Auxiliary on this letter.

¶ 4. Davis appealed this reprimand to defendants The American Legion, Department of Vermont (Legion Department) and The American Legion Auxiliary, Department of Vermont (Auxiliary Department). The Legion Department responded that Davis was a member of the Barre Post No. 10 Auxiliary Unit, not the Legion Department, and that it had "no obligations or supervisory rights" over Post matters. The Auxiliary Department also declined to hear her appeal. Davis then filed the lawsuit that is the subject of this appeal.

¶ 5. Davis's complaint seeks a preliminary injunction as well as compensatory and punitive damages based on five claims: (1) violation of the Vermont Public Accommodations Act on the basis of sex; (2) breach of an implied contract based on the failure of Post 10 or the Legion Department to follow its own rules; (3)

violation of a public policy favoring the right of free speech; (4) intentional infliction of emotional distress; and (5) libel. The trial court denied Davis's request for a preliminary injunction ordering defendants to reinstate her full privileges at the Post 10 club, and that denial is not before us on appeal. Our review is limited to Davis's claims for monetary damages.

¶ 6. The defendants in this matter are the Legion Department, Post 10, and eight individual members of the Post 10 House Committee. Davis did not sue her Auxiliary Unit or the Auxiliary Department. Post 10 and its named House Committee members jointly filed a motion to dismiss, while the Legion Department filed a separate motion to dismiss. We consider each in turn.

¶ 7. A basic explanation of the relationships among the various American Legion groups and subgroups is necessary to understand the foundation of Davis's claims and facilitate discussion of the relevant law. The following outline is based on unambiguous provisions of the charters and governing rules of Legion-affiliated groups incorporated by reference into Davis's complaint.

¶ 8. The American Legion is a federally chartered corporation, 36 U.S.C. § 21701(a), whose membership is limited to those who served in the Armed Forces. The organization maintains one Department in each state and within each Department are several Posts. Barre Post No. 10 is one such Post. Each Post is responsible for disciplining its own members.

¶ 9. The Sons of The American Legion is a civilian organization. Membership is limited to male descendants, adopted sons, and stepsons of either members of The American Legion or veterans who would qualify for membership. Local units of the Sons of The American Legion are called Squadrons. Like Posts, Squadrons are responsible for disciplining their own members.

¶ 10. The American Legion Auxiliary also is a civilian organization. Its membership is limited to mothers, wives, daughters, sisters, granddaughters, great-granddaughters, and grandmothers of either members of The American Legion or veterans who would qualify for membership. The Auxiliary has a Department in each state, which is further organized into local Units. Each Unit is "attached" to an American Legion Post. The Barre Post No. 10 Auxiliary Unit, of which Davis is a member, is affiliated with

Barre Post No. 10.[1] Auxiliary Units are responsible for disciplining their members, who may appeal such action to the corresponding Auxiliary Department.

¶ 11. American Legion Departments and American Legion Auxiliary Departments have no authority to regulate each other. Nor may American Legion Posts and American Legion Auxiliary Units regulate each other.

¶ 12. Motions to dismiss are generally disfavored. "We review a motion to dismiss using the same standard as the trial court." *Dernier v. Mortg. Network, Inc.*, 2013 VT 96, ¶ 23, 195 Vt. 113, 87 A.3d 465. In doing so, we "tak[e] all of the nonmoving party's factual allegations as true," and consider whether "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief. We treat all reasonable inferences from the complaint as true, and we assume that the movant's contravening assertions are false." *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309, 917 A.2d 508 (citations and quotations omitted).

¶ 13. Where pleadings rely upon outside documents, those documents "merge[ ] into the pleadings and the court may properly consider [them] under a Rule 12(b)(6) motion to dismiss." *Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 10 n.4, 186 Vt. 605, 987 A.2d 258 (mem.) (quotation omitted) (trial court properly relied on entire town plan where plaintiff specifically referred to plan in complaint, even though plaintiff did not attach full text of plan to complaint). The trial court may consider such documents without converting the motion into one for summary judgment. *Id.* This Court is not obliged to accept allegations of the complaint which purport to tell us how to construe these additional documents, but at the motion-to-dismiss stage we construe ambiguities within them in favor of the plaintiff. See *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). "[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998).

---

[1] Davis alleges in her complaint that the local American Legion Auxiliary Unit is a subsidiary organization within Post 10, but the Auxiliary National Bylaws, under which local Units are established, explain that Units are "attached" to Posts. We therefore use the term "affiliated" broadly. We need not and do not decide which of these characterizations is correct.

¶ 14. ██ Davis's first claim is that Post 10 and its House Committee violated the Public Accommodations Act, 9 V.S.A. § 4502(a), by denying her procedural rights that are available to male members of the Sons of The American Legion. We do not reach the question of whether the Public Accommodations Act applies to the facts of this case because the documents that govern each of the Legion-affiliated organizations, incorporated by reference into Davis's complaint, disprove Davis's prima facie claim under the Act. Section 4502(a) prohibits owners or operators of places of public accommodation from discriminating on the basis of, inter alia, sex. She does not assert that membership requirements of any Legion-affiliated organization discriminate on the basis of sex, or that anything she experienced at the karaoke event was due to her sex. Rather, Davis claims that the House Committee would have afforded her the procedural protections provided under the bylaws of Post 10 — which are described by reference to The American Legion's Officer's Guide — had she been a male member of the Sons of The American Legion instead of a female member of the Auxiliary.

¶ 15. The Officer's Guide, however, applies only to expulsions and suspensions of membership.[2] Davis is not a member of Post 10; she has merely been granted privileges to enjoy its facilities through the generally amicable relationship between the American Legion and the American Legion Auxiliary. The House Committee temporarily suspended those privileges in the same way clubs or restaurants exclude unruly guests. The fact that Post 10 and Post 10 Auxiliary are related organizations does not transform Post 10's actions against Davis into status-altering discipline. The House Committee did nothing to alter Davis's membership status in the Post 10 Auxiliary, nor could it have.

¶ 16. Sons of the American Legion Squadrons are positioned identically as Auxiliary Units with respect to affiliated Posts. Just as the House Committee here had no authority to suspend Davis's Auxiliary membership — and no reason, therefore, to afford her the process due for that action — it would have had no authority to suspend the Squadron membership of a similarly situated male. Davis's assertion that the House Committee would have afforded

---

[2] Post 10 has adopted the Officer's Guide, but it appears that the American Legion Auxiliary has not, so even if Davis's Auxiliary .Unit had suspended her membership, presumably she would not have been entitled to the procedures it recommends.

a Sons Squadron member the due process that she claims she was denied as a member of the Auxiliary has no basis in the charter or governing rules of any of these three organizations.

¶ 17. ■ ■ Davis's argument that the House Committee failed to follow its rules by not affording her the procedural protections in the Officer's Guide fails because the provisions of the Officer's Guide did not form an implied contract between Davis and Post 10, as Davis alleges. We have previously found implied contracts in the employment context, where, for example, an employer binds itself to the terms of a personnel manual by distributing the manual to its employees. See, e.g., *Havill v. Woodstock Soapstone Co.*, 2004 VT 73, ¶¶ 3, 12, 177 Vt. 297, 865 A.2d 335. Davis cites to one Rhode Island case that applies this concept to a private organization. *King v. Grand Chapter of R.I. Order of E. Star*, 919 A.2d 991 (R.I. 2007). The *King* court opined that "constitutions, bylaws, and rules of private organizations create a legally enforceable agreement . . . between the organization and the member because of corresponding mutual obligations." *Id.* at 998. One of the fundamental assumptions underlying *King*, though, is the fact of membership. See *id.* at 993 (describing question before court as regarding relationship between private organization and one of its "lifelong members"). There are no "mutual obligations" absent membership in a private club because its bylaws do not bind nonmembers and the organization has no power to enforce them against nonmembers.[3] This same presumption of a direct, mutual relationship underlies decisions where this Court has found an implied contract. See, e.g., *Havill*, 2004 VT 73, ¶ 12 (finding implied contract between employer and employee). Davis here lacks that sort of relationship with Post 10. She is not a member of Post 10, but of its affiliated Auxiliary organization, and the Officer's Guide, which she alleges forms the basis of the implied contract, applies only to members of the Post. Moreover, Post 10's bylaws dictate that the Officer's Guide governs procedure for *suspending the membership* of an individual, and the section of the Officer's Guide that addresses discipline refers exclusively to

---

[3] Of course, a private club is free to invite nonmembers into its facilities, and then later exclude those nonmembers from its facilities for whatever reason, subject to any statutory constraints that may apply. This is exactly what Post 10 did to Davis in this case. It would be absurd to say that private clubs have an implied contractual relationship with anyone who walks through their doors.

suspension or expulsion of Post members. Here, Davis's membership in the Auxiliary remained unaffected. Indeed, the Post 10 House Committee could not have suspended her Auxiliary membership even if it had wanted to.

¶ 18. ■ Davis next claims the Post 10 House Committee violated the "public policy favoring free speech" when it retaliated against her for posting her account of the karaoke-night squabble on the Legion Post Barre Facebook page. While courts occasionally intervene in the matters of a private club to undo expulsions or suspensions of membership when that organization acts pursuant to its own rule that contravenes public policy, e.g., *Gallaher v. Am. Legion*, 277 N.Y.S. 81 (Sup. Ct.), *aff'd*, 271 N.Y.S. 1012 (App. Div. 1934), such cases are inapposite here. Davis was a guest, not a member, of the group that banned her from its facilities, and her status within the group of which she was a member remained unaffected. Moreover, her account of the karaoke night's events and the decision of the House Committee to restrict her privileges at the Post club are not matters of public policy.

¶ 19. ■ Davis also argues that in denying her procedural rights, curtailing her free speech, and showing her granddaughter that "might does make right," defendant organizations intentionally inflicted emotional distress upon her. A prima facie claim for intentional infliction of emotional distress (IIED) must demonstrate "outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Fromson v. State*, 2004 VT 29, ¶ 14, 176 Vt. 395, 848 A.2d 344 (quotation omitted). No conduct alleged in Davis's complaint approaches outrageous conduct. Nor does she allege she suffered extreme emotional distress.

¶ 20. ■ Plaintiffs alleging IIED carry a heavy burden. *Id.* An IIED claimant will not succeed unless she can show that the defendant's actions were "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and be regarded as atrocious and utterly intolerable." *Cate v. City of Burlington*, 2013 VT 64, ¶ 28, 194 Vt. 265, 79 A.3d 854 (quotation omitted). That outrageous conduct must cause the plaintiff to suffer "distress so severe that no reasonable person could be expected to endure it."

*Baldwin v. Upper Valley Servs., Inc.*, 162 Vt. 51, 57, 644 A.2d 316, 319 (1994).

¶ 21. ■ Aside from Davis's conclusory statement that "[t]he actions of Defendants resulted in the intentional infliction of emotional distress on [her]," the only reference in Davis's complaint to anything resembling emotional distress is in Paragraph 20, where she characterizes being told to leave the club as an "embarrassing experience." Objectively, embarrassment from being asked to leave a club is neither severe nor unendurable.

¶ 22. ■ Davis's libel claim fails because the accusations in the House Committee's letter, even taken as false, are not sufficiently serious to constitute defamatory statements, and Davis, regardless, has not alleged any injury resulting from these statements. A prima facie claim for libel requires: (1) a false and defamatory printed[4] statement concerning another; (2) some negligence, or greater fault, in publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; and (5) some actual harm so as to warrant compensatory damages. *Lent v. Huntoon*, 143 Vt. 539, 546-47, 470 A.2d 1162, 1168 (1983). A defamatory statement is one that tends to "blacken the reputation of the plaintiff and expose her to public hatred, contempt or ridicule." *Kinsley v. Herald & Globe Ass'n*, 113 Vt. 272, 276, 34 A.2d 99, 101 (1943). "[L]iability for defamation must logically be based on some showing of harm to the plaintiff." *Lent*, 143 Vt. at 549, 470 A.2d at 1170. Such harm includes " 'impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.' " *Id.* at 549, 470 A.2d at 1169-70 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)).

¶ 23. ■ Contrary to Davis's contention on appeal, the trial court correctly separated the language of the House Committee's letter of reprimand from the disciplinary actions it effected. While allegedly libelous statements should be read in context, a grievance about the disciplinary effect of those words does not sound in defamation because a disciplinary action by its nature cannot be

---

[4] We acknowledge a split of authority as to whether defamation via television or radio should be categorized as libel or slander, 50 Am. Jur. 2d *Libel and Slander* § 10, but we express no opinion regarding this distinction because it is not applicable here.

a false and defamatory statement. We therefore examine only that language of the House Committee's letter which is not purely an explanation of the terms of her punishment.

¶ 24. ▮ The nondisciplinary language, contained entirely in the first paragraph, states that Davis failed to leave with a minor after the 7:00 p.m. deadline, did not follow the directions of staff, verbally attacked Post officers, and made inaccurate comments on the Barre Post Facebook page. Davis conceded in her Facebook posts submitted as exhibits that she did not leave the Post club immediately when staff asked her to. Davis's attorney, in a letter attached as Exhibit 8 appealing the House Committee's decision, acknowledged Davis's verbal attacks, but defended them as protected free speech. Indeed, Davis herself noted in one of her Facebook posts that she apologized to "the main individual involved" for her "lack of control" at the karaoke event. But even assuming Davis did none of these things, the Committee's statements taken as accusations are not severe enough to blacken Davis's reputation or "expose her to public hatred, contempt or ridicule." *Kinsley*, 113 Vt. at 276, 34 A.2d at 101. Davis therefore has not made out a prima facie claim of libel.

¶ 25. To the extent that any claims against the Legion Department overlap with those against other defendants, they are dismissed for the same reasons. To the extent that Davis claims that the Legion Department should have entertained her appeal or exercised supervisory authority over Post 10 in its dealings with Davis, she fails to allege any basis for a duty or obligation to do so.

¶ 26. For the foregoing reasons, all of Davis's claims were properly dismissed. She is therefore not entitled to compensatory or punitive damages.

*Affirmed.*