Filed 03/25/26

VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 25-CV-02602

**Stephen Maynus v. State of Vermont et al**

## ENTRY REGARDING MOTION

Title:      Motion to Dismiss Amended Complaint; Motion to Grant Leave to file Sur Reply (Motions: 7; 8)

Filer:      Peter A. Sterling; Stephen Maynus

Filed Date:      January 05, 2026; February 23, 2026

Plaintiff Stephen Maynus served in the National Guard with some of his time spent in Vermont. He has brought this case against the former Adjutant General of the Vermont National Guard ("VNG") (official capacity only), the VNG, and the State of Vermont ("State"). Defendants have moved to dismiss the case and certain counts (Mot. 7). Maynus opposes and has filed a motion for leave to file sur-reply (Mot. 8). Maynus represents himself and the Vermont Attorney General represents Defendants. For the reasons that follow, the court GRANTS IN PART and otherwise DISMISSES AS MOOT Defendants' motion to dismiss (Mot. 7) and GRANTS Maynus' motion for leave to file sur-reply (Mot. 8).

## I.      Background[1]

Maynus served on full-time National Guard duty under 32 U.S.C. § 101(19) from July 2020 to December 2023, except during a funding lapse between November 2020 and January 2023. Am. Compl. ¶¶ 3, 4, 90. He received a nominal discharge effective June 29, 2024. *Id.* ¶ 5. Maynus performed most of his duties in active guard and reserve duty status under 10 U.S.C. § 101(d)(6)(A). *Id.* ¶ 12. *See also* 32 U.S.C. § 101(19) (defining cross-referenced terms).

Maynus alleges two "infringed" benefits: (1) travel and transportation allowances under the Joint Travel Regulations[2] under 37 U.S.C. § 464; and (2) the final pay provision of 10 U.S.C. § 1168. *Id.* ¶¶ 15, 26–27, 33–34. His claims in (2) effectively duplicate those in (1) because he asserts (2) did not include proper amounts of (1). *Id.* Maynus claims remuneration shortages of

---

[1] The court reaches its background understanding of the case, mindful that "[a] document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

[2] In his Amended Complaint, Maynus quotes from and refers to what he calls the "Joint Travel Regulation" or "JTR." Am. Compl. ¶¶ 15, 27 n.3, 33 n.4. He does not provide a copy or citation. The court believes he refers to the Joint Travel Regulations for Uniformed Service Members and DOD Civilian Employees published by The Per Diem, Travel, and Transportation Allowance Committee of the U.S. Department of Defense, available at: https://media.defense.gov/2022/Jan/04/2002917147/-1/-1/0/JTR.PDF. The document acronymizes itself as the "JTR," as Maynus does the Joint Travel Regulation he references. JTR at 1. Maynus' citation to 37 U.S.C. § 464, the statutory provision authorizing the Secretary of Defense to promulgate implementing regulations, supports the court's identification of the JTR as the same referenced by Maynus. Am. Compl. ¶ 27. The court construes Maynus' references to the "JTR" (Joint Travel Regulation) as references to the JTR (Joint Travel Regulations).

about $100,000 from his service, apparently in Vermont for some portion, during stretches between July 2020 and December 2023. *Id.* ¶¶ 32–33, 42. He alleges he served as a "State servicemember" during this time but claims his reimbursement shortages violated federal statutory requirements. *Id.* ¶¶ 36–53.

Maynus brings this case in state court because, in his view, "wages being liberally construed within 21 V.S.A., and as a state employee due to military service being performed pursuant to 32 U.S.C. which kept [him] under state control . . . ." *Id.* ¶ 54. He alleges "miscellaneous remuneration owed" and retaliation for a federal congressional inquiry he led, in alleged violation of 20 and 21 V.S.A. *Id.* ¶¶ 46–63. He has filed four counts: (1) for declaratory relief against the former Vermont Adjutant General, Gregory Knight, under 20 V.S.A. § 486, *id.* ¶¶ 64–71; (2) for remuneration against Knight and the VNG, under 21 V.S.A. § 342, *id.* ¶¶ 72–75; (3) for damages from retaliation by Knight and VNG, presumably under 21 V.S.A. §§ 341–348 (his amended complaint does not say), *id.* ¶¶ 63, 76–79; and (4) for missed payment penalties by the State, under 32 V.S.A. § 932(b), *id.* ¶¶ 80–85.[3]

The State has moved to dismiss Maynus's entire case under Rule 12(b)(6) since, in its view, "[n]one of the claims are claims upon which relief may be granted." Mot. at 2. V.R.C.P. 12(b)(6). It has specifically moved to dismiss Count 3, alleging that Maynus has failed to state a retaliation claim under 21 V.S.A. § 348. Mot. at 7–9. In addition, the State has moved under Rule 12(b)(1) to dismiss: (a) Count 2, for failure to exhaust administrative remedies, Mot. at 3 (asserting "'[a] trial court lacks subject matter jurisdiction to hear a case if a party fails to exhaust administrative remedies'") (citation omitted); V.R.C.P. 12(b)(1); and (b) Counts 2 and 3 under preemption, Mot. at 4–7.

In opposition, Maynus variously asserts: (1) the applicable federal regulations constitute "guidance/policy," not mandatory administrative requirements, Opp. at 2–5; (2) Maynus "has exhausted all state administrative remedies [or] are otherwise futile," "need not follow any federal exhaustion," and the State has failed to prove failure to exhaust, Opp. at 5–10; (3) federal preemption does not apply because of various state law provisions that appear to apply to this case, Opp. at 10–21; and (4) he has adequately pleaded his retaliation claim under 21 V.S.A. § 348, Opp. at 21–22.

## II.  Discussion

The pending motions require the court to determine whether a National Guard member's service on "Full-time National Guard duty" under 32 U.S.C. § 101(19) and 10 U.S.C. § 101(d)(6)(A) qualifies them as an "employee" and the State as an "employer" under 21 V.S.A. § 341(1), (2). This court has not found any Vermont decision answering this question.

---

[3] Mr. Maynus notes in his amended complaint that the court already ruled against him as to Count 4, the same in substance as Count 5 of the original complaint. See Entry Regarding Motion 8–9 (filed Oct. 8, 2025) (dismissing Count 5 of the original complaint); see also *infra* n.4 at 4 (discussing related small claims case). He purports to have included that claim in his amended complaint solely to ensure that it is "preserv[ed]," presumably for appeal. He writes: "As the court has sua sponte determined a jurisdictional bar for bringing this claim, at this junction Plaintiff will consider this concluded as it's a pure rehash of previous Cause of Action Five but preserving for final judgment." Am. Compl. at 19 n.14. The court considers Count 4 dismissed. Nevertheless, the court includes Count 4 in today's decision, where applicable.

### A. Rule 12(b)(1) Motions

On a Rule 12(b)(1) motion, when extra-record evidence is not introduced, as here, the court accepts Plaintiffs' allegations as true, including all reasonable inferences, denying dismissal "unless it appears beyond doubt that there exist no facts or circumstances that would entitle the [non-movant] to relief." *Housing Our Seniors in VT Inc. v. Agency of Commerce & Comm. Dev.*, 2024 VT 12, ¶ 11, 21 Vt. 80, 85 (internal quotation and other citations omitted).

#### 1. Counts 2–4

The JTR make clear that a "traveler who disagrees with a decision by a certifying officer may submit an appeal or reclaim in accordance with DOD Financial Management Regulation, Vol. 9." ("FMR" available at https://comptroller.war.gov/Portals/45/documents/fmr/Volume_09.pdf). JTR at Intro-2. FMR § 8.2 outlines that appeal process. FMR § 8.2. The parties differ on whether Maynus has exhausted his administrative remedies. *Contrast* Mot. at 3–4 *with* Opp. at 3–10 (containing Defendants' view that he has not and Maynus' assertion that he has).

Ordinarily, a plaintiff must exhaust administrative remedies before filing in court. *Martin v. Gold*, No. 1:05-CV-28, 2005 WL 1862116, at *6 (D. Vt. Aug. 4, 2005); *see also Pratt v. Pallito*, 2017 VT 22, ¶ 15, 204 Vt. 313, 319 (2017) ("[W]hen administrative remedies are established by statute or regulation, a party must pursue or 'exhaust,' all such remedies before turning to the courts for relief."). Defendants must prove a plaintiff's failure to exhaust. *Martin*, 2005 WL 1862116, at *5. Maynus has the burden to demonstrate futility. *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 205 (2d Cir. 2007); *see* Opp. at 5 ("Plaintiff has exhausted all state administrative remedies, are otherwise futile . . . ."). State and federal law take different views on whether exhaustion constitutes a jurisdictional prerequisite. *See Pratt*, 2017 VT 22, ¶ 15 ("A trial court lacks subject matter jurisdiction to hear a case if a party fails to exhaust administrative remedies."); *Martin*, 2005 WL 1862116, at *5 ("The Second Circuit has held that administrative exhaustion is not a jurisdictional predicate."). Both state and federal courts agree that failure to exhaust requires dismissal. V.R.C.P. 12(b)(1); *Martin*, 2005 WL 1862116, at *6 ("Accordingly, when faced with a case where exhaustion was not complete prior to the filing of the complaint, the only action a [c]ourt in this Circuit may take is to dismiss the claim.").

Defendants have proved that Maynus has not exhausted his administrative remedies. Maynus asserts he has, but in a form of "conclusory allegations or legal conclusions masquerading as factual conclusions" that this court need not accept as true. *Vitale v. Bellows Falls Union High Sch.*, 2023 VT 15, ¶ 28, 217 Vt. 611 (quotation omitted); *see, e.g.*, Opp. at 5 ("Plaintiff has exhausted all state administrative remedies, are otherwise futile . . . ."); Surrep. ¶ 1 ("Plaintiff did not 'admit' he failed to exhaust administrative remedies . . .") (citing Opp. at 5).

Defendants correctly note that Maynus appears at one time to have challenged some determination with the appropriate department. Am. Compl n.2 (referencing a change in position by DFAS, the Defense Finance Accounting Service, one of the components referenced in the JTR

3

administrative process); FMR § 8.2.4. The FMR provides that DFAS must then respond and, if the claimant seeks further appeal, DFAS will forward the matter to the Defense Office of Hearings and Appeals ("DOHA"). FMR § 8.2.4. Maynus has nowhere alleged that he has done so. Instead, he alleges that DFAS directed him elsewhere or cannot yet review his claim, although Maynus cites no authority for either position. Am. Compl. ¶ 5 & n.2. The FMR contradicts Maynus' allegations, specifying DFAS as the component to which he should take his challenge in this case in the first instance. He has not done so.

Maynus has not demonstrated futility. He asserts that he

need not follow any federal exhaustion as it will not provide effective relief as no existence of doubling, costs, attorney fees etc. are permitted in administrative channels, and the state legislature has exempted administrative exhaustion by mandating these claims shall be brought by civil action via 21 V.S.A. § 347 "An employer who violates section 342 or 343 of this title shall forfeit to the individual injured twice the value thereof, to be recovered in a civil action". . . .

Opp. at 7–8. In other words, Maynus has in effect abandoned the federal administrative process based on a mistaken reading of Title 21. That does not establish futility to excuse his administrative exhaustion obligation. "To show futility, a plaintiff must demonstrate that 'adequate remedies are not reasonably available' or that 'the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process.' For relief to be adequate, it must 'give realistic protection to the claimed right.'" *Coleman*, 503 F.3d at 205 (citations omitted).

The court concludes that the appeal process outlined in FMR § 8.2.4 provides Maynus an adequate remedy which he has not exhausted. Because Defendants have proven that Maynus has failed to exhaust his administrative remedies and Maynus has failed to demonstrate futility, the court must dismiss his Counts 2–4.[4]

## 2. Count 1

Plaintiffs bear the burden of affirmatively showing subject matter jurisdiction by a preponderance of the evidence. *Decker v. Mayorkas*, Case No. 2:21-cv-164, 2022 WL 1288599, at *1 (D.Vt. Apr. 29, 2022) (Sessions, J.). For this court to have jurisdiction over his case, Maynus must demonstrate standing. *Bischoff v. Bletz*, 183 Vt. 235, 242 (2008). "To establish standing, a plaintiff 'must show (1) injury in fact, (2) causation, and (3) redressability.'" *In re Acorn Energy Solar 2, LLC*, 2021 VT 3, ¶ 53 (citation omitted). "In other words, 'the plaintiff must allege a personal injury traceable to the defendant's conduct that the court can remedy by granting the sought-after relief.'" *Id.* (citation omitted).

---

[4] The court previously dismissed a small claims action by Maynus that resembles Count 4 because it exceeded the $10,000 jurisdictional threshold. *Maynus v. State*, Case No. 25-SC-00884 (Jun. 6, 2025) (unpub. mem.). In addition, specific to Count 4, 32 V.S.A. § 932(a) explicitly requires filing in the small claims division. 32 V.S.A. § 932(a). The statute explicitly requires him first to exhaust administrative grievance procedures of the State agency or department. *Id.* § 932(b). *Cf. Furman v. Edwards*, 657 F. Supp. 1243, 1244-46 (D. Vt. 1987) (summarizing cases requiring exhaustion of administrative military remedies). If state law applies to Count 4, Maynus has not exhausted his state administrative remedies.

4

Maynus has not established standing for Count 1.  He seeks declaratory judgment by the court regarding Knight's responsibilities under 20 V.S.A. § 486.  Maynus has not alleged "a personal injury traceable to" whatever obligations Knight has or had under § 486.  Nor has Maynus alleged how the court's determination of "the duties and responsibilities of Defendant as the court may find appropriate due to provisions found in 20 V.S.A. § 486 concerning the Adjutant General's responsibility providing for right of pay for Plaintiff" could "remedy" any such hypothetical injury.  Am. Comp. ¶ 71.  Because Maynus has failed to meet his burden, the court dismisses Count 1 for lack of subject matter jurisdiction under Rule 12(b)(1).

## B.  Rule 12(b)(6) Motions

Under V.R.Civ.P. 12(b)(6), the court "must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor." *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514.  The court does not accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Vitale*, 2023 VT 15, ¶ 28.  The court considers whether "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Davis v. American Legion, Dept. of Vermont*, 2014 VT 134, ¶ 12, 198 Vt. 204 (quotation omitted).  "The purpose of a motion to dismiss is to test the law of the claim, not the facts which support it." *Powers v. Off. of Child Support*, 173 Vt. 390, 395 (2002).  As a result, only "where the plaintiff does not allege a legally cognizable claim, [is] dismissal . . . appropriate." *Montague*, 2019 VT 16, ¶ 11.

"The court's attention . . . is to be directed toward determining whether the bare allegations of the complaint constitute a statement of a claim under V.R.C.P. 8(a)." *Levinsky v. Diamond*, 140 Vt. 595, 600 (1982).  Rule 8 requires a "short and plain statement of the claim" in "simple, concise, and direct" language with "all pleadings [to] be construed as to do substantial justice." V.R.C.P. 8(a), (e), (f).  "[T]he threshold a plaintiff must cross in order to meet our notice-pleading standard is exceedingly low." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575 (citation omitted).  Consequently, "[m]otions to dismiss for failure to state a claim are disfavored and should be rarely granted." *Id*. (citation omitted).  The court should be "particularly wary of dismissing novel claims because '[t]he legal theory of a case should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations.'" *Montague*, 2019 VT 16, ¶ 11 (citation omitted).

Vermont's legal framework regarding National Guard members expressly defers to and complements its federal counterpart, giving the latter primacy.  For starters, as Maynus himself makes clear, his case involves federal, not state, military service: "full-time National Guard duty" "means. . . duty . . . for which the member is entitled to pay from the United States." 32 U.S.C. § 101(19); Am. Compl. ¶¶ 3–4.  By his own account, his case involves federal military "pay from the United States," not the State.

State National Guard service also involves pay and remuneration under federal law.  Vermont's "organized militia shall be known as the National Guard, and shall consist of the organizations and personnel . . . that the federal government requires to be maintained by the State." 20 V.S.A. § 361(b).  "The National Guard shall be organized in accordance with federal

regulations and approved by the Governor . . . [and] conform[] to federal regulations and any system of . . . administration . . . prescribed for the U.S. Armed Forces." *Id*. Consistently, cross references in Vermont's National Guard provisions include: "Organization of National Guard generally, see 32 U.S.C. § 101 et seq." 20 V.S.A. Part 2, Ch. 21.

"Matters relating to the organization . . . and government of the National Guard . . . shall be decided by the federal laws and regulations prescribed for the National Guard and the U.S. Army or Air Force as applicable." 20 V.S.A. § 362. The only exception to that blanket application of federal law comes from provisions in 20 V.S.A. §§ 361–965 or rules adopted by the Governor or Adjutant General. 20 V.S.A. § 362 (referencing "this chapter" which is Chapter 21, codified at 20 V.S.A. §§ 361–369, and "chapters 23 through 39 of this title," codified at 20 V.S.A. §§ 421–965). The only provision in Title 20's applicable sections that cross references 21 V.S.A does not apply to Maynus' case. *See* 20 V.S.A. § 608 (providing protections of 21 V.S.A. § 491 to service member's civilian employment during member's National Guard activation). Nothing else in 20 V.S.A. §§ 361–965 indicates explicitly or implicitly that state law applies to claims like Maynus' in this case.

Title 20's deference to federal law makes sense. Federal law provides a fulsome statutory and regulatory framework related to pay, remuneration, and benefits for military personnel. *See generally* 37 U.S.C. §§ 101–1016 (providing comprehensive statutory framework); *id.* § 464 (authorizing implementing regulations); JTR (containing some of the implanting regulations). That framework explicitly provides for entitlement to basic pay for full-time National Guard members and other pay for them in other circumstances. *Id.* §§ 204, 206. It also outlines travel and transportation allowances, *id.* §§ 435, 451–464, and authorizes the Secretary of Defense to promulgate implementing regulations, *id.* § 464. The extensive federal statutory framework contains separate chapters related to special and incentive pay, *id.* §§ 301–384, allowances other than travel and transportation, *id.* §§ 401–439, leave, *id.* §§ 501–504, payments to missing persons, *id.* §§ 551–559, payments to mentally incompetent persons, *id.* §§ 601–604, allotments and assignments of pay, *id.* §§ 701–707, prohibitions and penalties, *id.* §§ 802–803, miscellaneous rights and benefits, *id.* §§ 901–910, and administration, *id.* §§ 1001–1016. Maynus cites to many of these statutory and regulatory provisions supporting his case. Am. Compl. ¶¶ 37–54. These statutes appear to cover the waterfront of typical human resource compensation and benefits provisions, leaving little room or reason for State involvement.

The 573-page JTR implement some or all of this statutory framework. Consistent with their enabling statutes, the JTR clarify that "[t]he JTR applies to . . . Uniformed Service Active and Reserve Component members . . . ." like Maynus. JTR at Intro-1. The JTR's 18-page table of contents speaks to its fulsomeness. *Id.* at TOC-1 to TOC-18. The JTR chapters mirror and further delineate the subject matters outlined by the enabling statutory framework. *Id.*

Vermont state law, by contrast, contains a single and narrow provision on the topic of National Guard member pay, without mention of expense remuneration that dominates Maynus' case. Title 20 states that "[t]he Adjutant and Inspector General shall provide for the pay of each officer and enlisted Guard member for duty performed and authorized in accordance with" 20 V.S.A. §§ 361–965 and "shall adopt rules to carry out the provisions of this section." 20 V.SA.

§ 486. By this court's reading, even those rules may only apply in the absence of federal law and regulation:

> All matters relating to the organization, government, and discipline of the National Guard, including nonjudicial punishment similar to that provided for in the Uniform Code of Military Justice, not otherwise provided for by the laws of the United States, this chapter, or regulations issued by the President shall be governed by rules adopted by the Adjutant and Inspector General and approved by the Governor, and the adopted rules shall have the same force and effect as though enacted in this chapter.

*Id.* § 945. Maynus challenges remuneration for travel reimbursements and expenses, not his pay in the strict sense. Am. Compl. ¶¶ 15, 26–27, 33–34. His challenge regarding "final pay" relates to his allegation that it did not include appropriate reimbursements, not that it failed to include an appropriate pay rate. *Id.* Nevertheless, inasmuch as §§ 486 and 945 apply to Maynus' allegations, they do so only where federal law has allowed. Maynus has not alleged that Defendants have violated any VNG, Adjutant, or Inspector General rule in any event.

Other provisions in Title 20 demonstrate a consistent approach of the primacy of federal law, with limited supplementation by state law where no federal law exists. *See, e.g.*, 20 V.S.A. § 642 (applying federal law for failures of service members to report to duty); *id.* §§ 701–702 (regarding oaths under federal law); *id.* § 824 (applying to uniforms provided by federal law); *id.* § 885 (limiting brevet rank conferred by Governor to the State's geography); *id.* § 886 (regarding retirement under federal rules); *id.* § 945 (allowing Adjutant and Inspector General to adopt rules, with the Governor's approval, only in the absence of federal law and regulation).

Vermont's statutory approach aligns with the Supreme Court's recognition in a different and relevant context that "[t]he relationship between the Government and members of its armed forces is 'distinctly federal in character' . . . ." *Feres v. United States*, 340 U.S. 135, 143 (1950) (citation omitted).

> To whatever extent state law may apply to govern the relations between soldiers or others in the armed forces and persons outside them or nonfederal governmental agencies, the scope, nature, legal incidents and consequence of the relation between persons in service and the Government are fundamentally derived from federal sources and governed by federal authority.

*Id.* at 143-44 (citations omitted). "Without exception, the relationship of military personnel to the Government has been governed exclusively by federal law." *Id.* at 146; *see also Gibbs v. Newport News Shipbuilding & Drydock Co.*, 284 Va. 677, 682, 733 S.E.2d 648, 651 (2012) ("Neither we nor the General Assembly has the authority to define our laws in such a way as to affect the relationship between the federal government and members of its armed forces on active duty.").

The court finds the discussion in *Feres* persuasive here, especially given its reference to "nonfederal governmental agencies" like Defendants in this case—federal law overwhelmingly

applies to military decisions where civilian courts may intervene only sparingly. Other jurisdictions addressing claims like Maynus' have declined to apply state civil employment law remedies to military personnel matters. *See Matreale v. NJ Dept. of Mil. & Vet. Affairs*, 487 F.3d 150, 156–58 (3d Cir. 2007) (applying *Feres* doctrine to bar Title 32 National Guard member like Maynus from suing under state employment discrimination law)*; Overton v. NY State Div of Mil. and Naval Affairs*, 373 F.3d 83, 96 (2d Cir. 2004) (applying *Feres* and dismissing National Guard technician's Title VII claim "'integrally related to the military's unique structure'") (citation omitted); *Davidson v. United States*, 117 F. Supp.3d 876 (N.D. Miss. 2015) (barring state guard member's federal and state employment claims under *Feres*); *Perez v. United States*, 951 F. Supp.2d 279 (D.P.R. 2013) (following *Matreale* to bar Title VII claims ); *Gonzalez v. NJ Nat'l Guard*, Civil No. 06-5254, 2007 WL 1686135 (D.N.J. Jun. 8, 2007) (following *Matreale* to bar state law retaliation claim by federally activated guard member).

This court concludes that the statutory language and framework of Title 20 shows Vermont's unambiguous legislative intent that the pay and expense remuneration provisions for National Guard members like Maynus arise under federal, not state, law. The court must read 21 V.S.A. § 341(2)'s definition of "employer" in this context of Title 20. *See Jacobs v. Holden Leonard Co.*, 110 Vt. 245, (1939) ("It is a well recognized rule of statutory construction that effect must be given to all the provisions of a statute if possible."); *see also United States v. EZ Lynk, SEZC*, 149 F.4th 190, 203 (2d Cir. 2025) ("Under normal rules of statutory interpretation, "courts must give effect to all of a statute's provisions 'so that no part will be inoperative or superfluous, void or insignificant.'") (citations omitted); *contrast* Opp. at 14 (reading "employer" definition in § 654 otherwise). Title 20's explicit application of federal law to the National Guard's "organization" and "administration," 20 V.S.A. § 361(b), implicitly limit the "employer" definition of 21 V.S.A. § 341(2) to an "employer [under applicable state law]."

The court believes this statutory interpretation better suits this case than a preemption analysis. "[F]ederal pre-emption of state law" typically applies in instances of "clear statutory prescription" or "a direct conflict between federal and state law." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988) (citations omitted). It may also apply to "'uniquely federal interests'" "so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and replaced, where necessary, by federal law of a content prescribed (absent explicit statutory directive) by the courts – so called 'federal common law.'" *Id.* (citations omitted). In those instances, there must also exist "a 'significant conflict' . . . between an identifiable 'federal policy or interest and the [operation] of state law.'" *Id.* at 507 (citations omitted) (second alteration in original). "The conflict with federal policy need not be as sharp as that which must exist for ordinary pre-emption . . . . But conflict there must be." *Id.* at 507–08 (citation omitted).

> If, for example, the United States contracts for the purchase and installation of an air conditioning-unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary. The contractor could

comply with both its contractual obligations and the state-prescribed duty of care. No one suggests that state law would generally be pre-empted in this context.

*Id.* at 509; *see also Empire HealthChoice Assu., Inc. v McVeigh*, 396 F.3d 136, 141 (2d Cir. 2005) ("[R]egardless of the strength or importance of the federal interests at stake, [plaintiff] has failed to demonstrate that the operation of New York state law creates 'an actual, significant conflict' with those interests." (citation omitted)).

In this case, Defendants have asserted preemption. Yet no party has identified a conflict between federal and state law. As the discussion of Title 20 above shows, Vermont's law expressly defers to and complements federal law. It does not conflict with it. Federal and state law agree that federal law applies to Maynus' case. Title 21 provides Maynus no cause of action for his alleged harms. Counts 2-4 fail to state a claim under Rule 12(b)(6).

## III.   Order

For the reasons set forth above, the court:

    A. GRANTS IN PART Defendants' motion to dismiss (Mot. 7) insofar as it seeks to dismiss Counts 2–4 under Rule 12(b)(1) for lack of subject matter jurisdiction due to Maynus' failure to exhaust his administrative remedies and, in the alternative, under Rule 12(b)(6) for failure to state a claim under Title 21 V.S.A;

    B. GRANTS IN PART Defendants' motion to dismiss (Mot. 7) Count 1 for lack of subject matter jurisdiction under Rule 12(b)(1);

    C. Otherwise DISMISSES AS MOOT Defendants' motion to dismiss (Mot. 7); and

    D. GRANTS Maynus' motion for leave to file sur-reply (Mot. 8).

Electronically signed pursuant to V.R.E.F. 9(d) on March 24, 2026.

Colin Owyang
Superior Court Judge

9